# 24-648

## UNITED STATES COURT OF APPEALS
## *for the*
## SECOND CIRCUIT

BARRY A. COHEN,

Plaintiff – Appellant,

v.

ARNOT HEALTH, INC., ARNOT OGDEN MEDICAL CENTER,
DBA ARNOT HEALTH, ELEANOR CALLANAN, individually,

Defendants – Appellees.

_____

*Appeal from the United States District Court*
*For the Northern District of New York*
*Case No. 3:22-CV-0178 (GTS/ML)*

## APPELLANT'S BRIEF
### ORAL ARGUMENT REQUESTED

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.
*Counsel for Plaintiff – Appellant*
106 East Court Street
Ithaca, New York 14850
(607) 269-1300; (607) 269-1301 fax
office@kopko.law

**TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF ISSUES ............................................................................ 1

STATEMENT OF THE CASE ....................................................................... 2

SUMMARY OF THE ARGUMENT .............................................................. 7

ARGUMENT ................................................................................................ 7

    I.    *DE NOVO* and SUMMARY JUDGMENT STANDARD OF REVIEW ........ 7

    II.    THE APPELLATE COURT SHOULD REVERSE THE LOWER COURT'S HOLDING BECAUSE ISSUES OF FACT EXIST WHETHER COHEN SUFFERED AN ADVERSE ACTION ................................................. 8

    III.    AOMC'S ACTIONS, RENDERING COHEN'S EFFORTS TO COMPLETE THE APPLICATION PROCESS FUTILE OCCURRED UNDER CIRCUMSTANCES GIVING RISE TO AN INFERENCE OF DISCRIMINATION ................................................................. 10

    IV.    THE APPELLATE COURT SHOULD REVERSE THE LOWER COURT'S HOLDING THAT COHEN FAILED TO ESTABLISH A PRIA FACIE CASE UNDER THE NYSHRL ................................................. 16

CONCLUSION ........................................................................................... 17

STATEMENT OF COMPLIANCE .............................................................. 18

i

# TABLE OF AUTHORITIES

## Cases

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2nd Cir. 2005) ................................................7

*Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 135 (2d Cir. 2000) ...............................10, 11

*Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) ................................10

*Cronin v. Aetna Life Ins., Co.*, 46 F.3d 196, 204 (2d Cir. 1995) ......................................10

*Dew v. Edmunds*, 2015 U.S. Dist. LEXIS 138708 (D. Idaho 2015) .......................................8

*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640-41 (2d Cir. 2002) .................................8

*Grozynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) ..................................8

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ...................................................8

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367-68 (1977) ................................8

*Johnson v. County of Nassau*, 82 F.Supp.3d 533, 536 (E.D.N.Y. 2015) .............................16

*Keshinover v. New York State Off. Of Parks, Recreation and Historic Preservation*, 17-CV-4349, 2019 WL 5212235, at *9 (S.D.N.Y. Oct. 15, 2019) ..................................................9

*Kessler v. Westchester Cty. Dept. Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006) ..........................8

*Leibowitz v. Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009) ....................................10

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 113 (2d Cir. 1992) .............10

*Marlarkey v. Texaco, Inc.*, 983 F.3d 1204, 1213 (2d Cir. 1993) ..........................................8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ..........................................13

*Redd v. New York Div. of Parole*, 923 F.Supp.2d 371, 392 (E.D.N.Y. 2012) ....................16

*Schwapp v. Town of Avon*, 118 F.3d 106, 10 (2d Cir. 1997) ................................................8

*Silver v. North Shore University Hospital*, 490 F.Supp.2d 354, 363 (S.D.N.Y. 2004) .......11

*Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)........13, 14

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) ..............................................16

## Statutes

28 U.S.C § 1291 ...............................................................................................................1

28 U.S.C. § 1332 .............................................................................................................1

29 U.S.C. § 623 (a) (1) .....................................................................................................2

Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §§ 621 ...........................1, 2

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L §§ 290 ................1, 2, 16

NYSHRL section 296(6) ................................................................................................16

## Rules

Fed.R.Civ.P. 56(c) ............................................................................................................7

Rule 4(a)(1) of the Federal Rules of Appellate Procedure ...............................................1

## STATEMENT OF JURISDICTION

Plaintiff-Appellant filed claims under the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L §§ 290 et seq. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. On March 4, 2024, Plaintiff-Appellant filed a Notice of Appeal of the District Court's February 1, 2024 decision. (JA639). The appeal is timely pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure because the Notice of Appeal in this civil case was filed within thirty days of the District Court's decision. This Court of Appeals has jurisdiction pursuant to 28 U.S.C § 1291 because the February 1, 2024 decision is a final order or judgment that disposes of all parties' claims in Case No. 3:22-CV-0178. Plaintiff-Appellant timely appealed.

## STATEMENT OF ISSUES

1. Whether the District Court erred in granting summary judgment to Defendants where:

    a. Questions of fact exist whether Plaintiff suffered an adverse employment action where his continued participation in the hiring process was futile;

    b. Questions of fact exist whether the failure to hire Plaintiff occurred under circumstances giving rise to an inference of discrimination; and

    c. Plaintiff stated a viable claim pursuant to New York State Human Rights

1

Law.

## STATEMENT OF THE CASE

Plaintiff-Appellant initiated this action against Arnot Health, Inc. and Arnot Ogden Medical Center, d/b/a Arnot Health, for age discrimination in the terms, conditions, and privileges of employment as protected under the Age Discrimination in Employment Act, (ADEA), 29 U.S.C. § 621 et seq. and The New York State Human Rights Law, Executive Law §§ 290 et seq. Plaintiff brings causes of action against Defendant-Appellee Eleanor Callanan, individually, for aiding and abetting age discrimination under the NYSHRL, Executive Law §§ 290 et seq. ("Human Rights Law"). Plaintiff-Appellant also seeks costs and attorney's fees authorized by 29 U.S.C. § 623 (a) (1) and other relevant statutes. On February 1, 2024 the District Court of the Northern District of New York issued a Decision and Order granting summary judgment to Defendants-Appellees, JA-602 to 636, and issued a Judgment on the same date. JA637. (*Cohen v. Arnot Health, Inc.,* Civil No. 3:22-CV-0178 (GTS) (Feb.1, 2024). Plaintiff-Appellant timely appealed.

### A. Factual Background

Plaintiff-Appellant, Barry A. Cohen ("Cohen") is a physician with a specialty in sleep medicine. JA-468 to 470. In or about August, 2019 Defendant-Appellee Arnot Ogden Medical Center ("AOMC") posted an opening for a sleep physician position. On August 28, 2019 Cohen applied for that position. JA467. Cohen was sixty-six (66)

2

years of age when he applied for the job and was licensed to practice medicine in New York. JA468, 485 to 488. At the time Cohen applied for the position, he lived in Pennsylvania, and AOMC was located in New York. JA338, 467.

Defendant-Appellee Eleanor Callanan ("Callanan") worked as a recruiter of specialty medical providers for AOMC at the time of Cohen's application. JA86.

Cohen received no response to his application, so, on September 9, 2019, he sent a second email to Callanan to determine whether or not AOMC had reviewed his application. JA470. On September 25, 2019 Cohen received an email from Callanan concerning Cohen's application. JA459. Callanan inadvertently sent the email to Cohen, having intended to send it to Elizabeth Monroe, Director of Medical Services. Callanan's email read:

> Can you please review this CV and give me a call? Need help finding a reason that we don't want to consider a 66yo. I thought that we required fellowship training? This physician took a 120 hour sleep course in 2004 and passed the ABSM certification test. JA459.

After receiving this email, Cohen wrote to Jonathan Lawrence ("Lawrence"), Chief Executive Officer of AOMC stating "it seems I am a victim of age discrimination." JA472.

Lawrence replied via email on October 28, 2019 stating in relevant part:

> Arnot has a long history of hiring qualified physicians of all ages and does not discriminate on this basis. We do not tolerate any form of discrimination at Arnot, whether based on age or any other characteristic. Please be assured that we are addressing your concerns with the employee who sent the email, and your application will be considered solely on its merits. Meanwhile, we

3

would like to schedule an interview so that we may further evaluate your credentials and experience. You have my assurance that Ms. Callanan will have no involvement whatsoever in your interview or the decision-making process related to your application. I am copying Karthika Surendran on this email so that she can coordinate with you to schedule an interview if you are still interested. JA40.

Like Callanan, Karthika Surendran ("Surendran") was a recruiter of medical specialty providers for AOMC. JA45. Surendran emailed Cohen inviting Cohen for an interview and requesting additional information and dates for the interview. JA74, 78. Cohen replied to Surendran providing dates he was available and the information she requested.

Cohen received an interview itinerary from Surendran on November 18, 2019. JA46. Surendran also emailed Cohen about a phone interview with a sleep medicine physician at AOMC which was scheduled for November 25, 2019. JA81.

> The itinerary provided stated Cohen would meet:
> a. At 12:55 p.m. Surendran at the AOMC lobby;
> b. From 1-1:30 p.m. CEO Lawrence and Dr. Kenneth Herzl-Betz, Chief Medical Officer in Lawrence's office;
> c. From 1:45-2:15 p.m. Dr. Mark Ivanick, Sleep Medicine Physician and Floyd Metzger, Operations Director Medical Specialties in conference room 102; and
> d. From 2:15-2:45 p.m. Heather Krauss, Director of Employee relations in conference room 102.
> JA54.

In Cohen's opinion, based on numerous prior interviews for positions at other medical facilities, the itinerary appeared insufficient and superficial. JA475. The itinerary provided for no meals or lodgings, and even though Cohen lived nine hours round trip from AOMC, AOMC set aside only two hours for the interview. JA54. The

interviews were in small group meetings, rather than thirty to sixty minutes interviews with individuals.  Id.  All the interviews were in one location, and no tour of the facility, the sleep lab, the pulmonary department, or the surrounding community were included in the itinerary.  Id.  Interviews with personnel Cohen expected to meet were also not included, including no interview with the leaders of the respiratory program, the director of the sleep lab, the director of the office, the sleep technicians, the nighttime or daytime sleep technicians, the head of respiratory therapy, and CPAP educators.  Id.  Cohen considered the itinerary indication that AOMC had no real interest in hiring him and was merely going through the motions of an interview in order to appear non-discriminatory, although it was clear to Cohen he was being discriminated against because of his age.  JA475.

Accordingly, recognizing AOMC's interview process was a sham and any effort to partake in it was futile since AOMC was not seriously considering him for the position because of his age, Cohen withdrew from the process on November 29, 2015 by emailing Surendran stating: "I think I wish to cancel the interview.  I was very interested in August, but now I have a better job offer."  JA82 to 83.

In actuality, Cohen did not have a better job offer at that time and withdrew because he was at that point skeptical of AOMC.  JA475.

**B.    Procedural History**

Cohen filed a Charge of Discrimination with the U.S. Equal Employment

5

Opportunity Commission ("EEOC") on January 30, 2020, alleging AOMC discriminated against him because of his age in violation of the Age Discrimination in Employment Act. JA277.

The EEOC determined that there was reasonable cause to believe AOMC subjected to Cohen to age discrimination, and that there was reasonable cause to believe AOMC had subjected a class of applicants – those applicants for vacant physician positions – overseen by Callanan or any of her subordinates from January 1, 2016 to the present – denying them employment opportunities because of their age. JA277 to 278.

The EEOC issued a right to sue letter, and the underlying action was filed in the Supreme Court of the State of New York on January 12, 2022. JA280 to 281, 1 to 18. Defendants-Appellees filed a Notice of Filing and Removal to Federal Court on February 25, 2022. Defendants-Appellees answered Cohen's complaint on March 4, 2022. JA19 to 24. Subsequently, discovery was conducted, including the depositions of Cohen and Callanan. JA282 to 458.

On April 21, 2023 Defendants-Appellees filed a motion for summary judgment, supported by the Declarations of Lawrence, Surendran, and Callanan. JA25 to 146. Cohen opposed the motion. JA 147 to 559. The District Court issued a Decision and Order on February 1, 2024, granting summary judgment to Defendants-Appellees and dismissing Cohen's complaint. JA602 to 636.

6

## SUMMARY OF THE ARGUMENT

The Appellate Court should reverse the district court's holding that no reasonable fact finder could conclude that Cohen's withdrawal from the interview process could be considered an adverse action because continuing with the process would have been futile. The district court relied on the fact that Callanan was removed from the application process, that the interview itinerary was not evidence of an intention to not fairly consider Cohen for the position, and that Callanan's email did not represent AOMC's final decision whether to hire Cohen or not. These issues are fact driven, and a jury could very well believe Cohen that Callanan's email evidenced AOMC's discriminatory policy, and that subsequent efforts to conduct the interview were a sham disguised to hide AOMC's discrimination, and not a genuine effort to interview him as a viable candidate for the position.

## ARGUMENT

### I. *DE NOVO* and SUMMARY JUDGMENT STANDARD OF REVIEW

An appeal from a grant of summary judgment is reviewed *de novo*, with all evidence construed in a light favorable to the non-moving party, drawing all reasonable inferences in its favor. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2nd Cir. 2005). The decision will be affirmed only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The Second Circuit cautions granting summary judgment to the employer in a discrimination case where the merits center on a dispute as to the employer's intent. *Grozynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010). As evidence of an employer's discriminator intent will rarely be obvious, affidavits and depositions must be reviewed for circumstantial proof, which if accepted would show discrimination. *Schwapp v. Town of Avon*, 118 F.3d 106, 10 (2d Cir. 1997); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

## II. THE APPELLATE COURT SHOULD REVERSE THE LOWER COURT'S HOLDING BECAUSE ISSUES OF FACT EXIST WHETHER COHEN SUFFERED AN ADVERSE ACTION

An "adverse employment action" can include termination from employment, demotion such as wage or salary decrease, a demotion of title, a loss of benefits, reassignment, lowered responsibilities, or other indications "unique to a particular situation." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640-41 (2d Cir. 2002); *see also Kessler v. Westchester Cty. Dept. Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006).

While there is typically no adverse employment action where a plaintiff voluntarily withdraws his application prior to being offered the job, where a plaintiff shows there is such a pervasive atmosphere of discrimination that continued participation in the hiring process would be futile, he can show an adverse employment action. *See Dew v. Edmunds*, 2015 U.S. Dist. LEXIS 138708 (D. Idaho 2015); *cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367-68 (1977); *Marlarkey v. Texaco,*

*Inc.*, 983 F.3d 1204, 1213 (2d Cir. 1993); see also *Keshinover v. New York State Off. Of Parks, Recreation and Historic Preservation*, 17-CV-4349, 2019 WL 5212235, at *9 (S.D.N.Y. Oct. 15, 2019).

Here, Callanan's email inadvertently sent to Cohen stating "Need help finding a reason that we don't want to consider a 66yo" tainted the employment process. The subsequent offer to interview and written itinerary demonstrated that the interview process by AOMC was remedial to cover-up the obvious age-based discrimination and to give the appearance that AOMC was not discriminating against Cohen. JA476. The itinerary sent to Cohen was inadequate and insufficient and demonstrated to Cohen that AOMC was merely going through the motions in order to appear non-discriminatory. JA478. Thus, to Cohen, completing the interview process knowing as he did that, he was being discriminated against because of his age was futile and accordingly he withdrew his application.

While withdrawal of an employment application typically obviates an adverse employment action, here, the unique circumstances of this particular situation, where the cat was out of the bag so to speak through Callanan's email, and where it was futile to go through the farcical interview process as evidenced by the inadequate itinerary, Cohen had already suffered the adverse employment action by being denied an employment opportunity.

9

### III. AOMC'S ACTIONS, RENDERING COHEN'S EFFORTS TO COMPLETE THE APPLICATION PROCESS FUTILE OCCURRED UNDER CIRCUMSTANCES GIVING RISE TO AN INFERENCE OF DISCRIMINATION

"…[A]n inference of discriminatory intent may be derived from a variety of circumstances…" *Leibowitz v. Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009). These include —but are not limited to— the employer seeking other applicants with plaintiff's qualifications; criticism of plaintiff's performance in ethnically degrading terms; negative comments about others in the employee's protected group; more favorable treatment of employees not in the protected group; or the sequence of events leading to plaintiff's discharge. *Leibowitz*, 584 F.3d at 502, citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 135 (2d Cir. 2000); *Cronin v. Aetna Life Ins., Co.*, 46 F.3d 196, 204 (2d Cir. 1995); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 113 (2d Cir. 1992).

Here, where there is an email — "Need help finding a reason that we don't want to consider a 66yo"—irrefutably and unequivocally citing to Cohen's age in an effort to find a reason to reject his application, the inference is easily made. Furthermore, Callanan offers no credible reason for that email:

Q. Well, that's fine. But why did you include the request "need help finding a reason why we don't want to consider a 66-year-old"?
A. I can't speak to that. I don't know. I did not mean it. I know I did not mean it. I know it sounds like that's what it was, but it really was just a

10

request to review the CV of a man who was trained a number of years ago
to see if that training would meet the criteria we were requesting.
JA431 to 432.
Q.  Yeah.  And you have no explanation as to why you did that?
    MR. WHITAKER:  Object to form.
A.      I don't have an explanation for why it reads like that.  I recognize
it reads terribly.  It's not what I meant to say.
JA432 to 433.

AOMC argues a single stray remark is insufficient to establish age discrimination
here.  "…[O]ne stray comment by itself is usually not sufficient proof to show age
discrimination, that stray comment may bear a more ominous significance when
considered within the totality of the evidence." *Carlton v. Mystic Transp., Inc.*, 202 F.3d
129, 136 (2d Cir. 2004).  Whether the comment evidences an intent to discriminate can
be determined by considering who made the remark; when the remark was made in
relation to the employment decision; the content of the remark; and the context of the
remark.  *Silver v. North Shore University Hospital*, 490 F.Supp.2d 354, 363 (S.D.N.Y.
2004).

Here Callanan's email mistakenly sent to Cohen revealed age discrimination in
AOMC's hiring practices.  The email naturally caused concern to Cohen that his age
was a deciding factor in AOMC's consideration of his employment application.  JA471.
The email, however, was not the only indication of discrimination.

Callanan told Cohen that the candidate needed fellowship training in sleep
medicine which Cohen, Callanan thought, did not have.  JA43.  Cohen explained to

11

Callanan that he had more than ample training, education and experience for the position. Id.

Subsequently, the issue of requiring fellowship training was not raised by AOMC again. Instead, AOMC invited Cohen in for an interview sending him a written itinerary that demonstrated to Cohen AOMC was not at all serious about considering him for the position. JA478. The itinerary was inadequate and lacking in the usual and customary meetings, dining, lodging, and tours normally associated with such an interview. JA477 to 480. This itinerary confirmed for Cohen that AOMC, which had already revealed its discriminatory hand, was merely going through the motions in order to cover-up and remediate its discrimination against Cohen. Id.

Callanan cannot justify her irrefutably discriminatory email except to say in essence it does not mean what it says. JA431 to 432. Callanan then provides this Court with numerous examples she claims of hiring other candidates in the protected age group, without any explanation as to her discriminatory acts against Cohen. JA91 to 96.

Surendran explains that the itinerary she sent to Cohen was typical. JA46 to 48. The numerous itineraries attached to the accompanying Kopko Declaration obtained through a FOIA request to the EEOC show otherwise. JA170 to 275. It is evidently customary for AOMC to offer candidates meals, lodgings, tours, and the like, none of which was offered to Cohen who was driving approximately nine hours round trip for

12

meetings to last a little less than two hours.  Id.  Cohen, who has had significant experience interviewing for positions over his long career, recognized AOMC's itinerary for what it is:  a sham to cover up and remedy AOMC's discriminatory practices.

Once plaintiff has established a *prima facie* case, the burden shifts to the defendant to offer legitimate, non-discriminatory reasons for its actions.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The employer's justification for its action can be overcome by "circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997).

The circumstances under which Cohen was denied an employment opportunity give rise to an inference of discrimination.  Cohen relies on more than Callanan's single email in support of this argument.  AOMC stresses that Callanan's email is the only remark or communication that Cohen believes supports his claim for discrimination.  JA29.

It is clear from Cohen's testimony, however, that AOMC's interview process was a farce, a remedial process engaged in by AOMC to cover-up its unlawful hiring practices.  JA476.

Indeed, Callanan who testified she had confirmed with AOMC's Director of Medical Staff Services, Elizabeth Monroe, that Cohen lacked the credential for the

13

position was unable to explain why, if Cohen had not met the criteria, AOMC continued to recruit him.  JA422 to 423.

Taking Callanan's remark into context of the subsequent sham remedial interview process, the remark has significance.  Further, the totality of these facts create an inference that the denial of an employment opportunity to Cohen by AOMC occurred under circumstances of discrimination.

Defendants' rationale can be overcome by "circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997).

After Callanan's email, which purportedly questions Cohen's qualifications, CEO Lawrence removed Callanan from the recruiting process and assigned Karthika Surendran as the new recruiter to consider Cohen's qualifications like any other candidate.  JA40.  Lawrence undoubtedly recognized that Callanan's email could be inferred as discriminatory since he was "troubled by the allegation" and "took immediate corrective action."  JA37.

Subsequently, Surendran arranged for an interview itinerary.  JA83.  Surendran describes communicating with Cohen to obtain additional information from him concerning his pre-employment credentialing.  JA46.   In none of these emails does Surendran follow-up on the GME accreditation program Callanan claims gave her pause,

14

prompting her email. If the GME accreditation program was truly that important to Cohen's qualifications as Callanan claimed, and Surendran was tasked with obtaining Cohen's pre-employment credentialing, then Surendran would have followed-up with Cohen on the GME accreditation program issue to determine whether Cohen was actually qualified for the sleep physician position. She did not.

She did not because at that point AOMC fully recognized that Callanan had inadvertently disclosed AOMC's discriminatory bias by asking for "help" in how to justify not considering a sixty-six (66) year old candidate for employment. The subsequent efforts by AOMC to assign a new recruiter and go through the interview process was a sham since at no time was the issue of GME accreditation raised, purportedly the justification Callanan proffers to explain away an otherwise self-evidently discriminatory statement. If GME accreditation was truly at issue, that would have certainly been raised by AOMC rather than go through the show of an interview with Cohen. Instead, Surendran arranged for an interview in order to avoid the appearance that AOMC had discriminated against Cohen.

Thus, the varied explanations for Callanan's email and the subsequent efforts AOMC took to legitimize the hiring process is plainly insufficient to set forth legitimate, non-discriminatory reasons for the adverse action of subjecting Cohen to denial of an employment opportunity.

**IV.    THE APPELLATE COURT SHOULD REVERSE THE LOWER COURT'S HOLDING THAT COHEN FAILED TO ESTABLISH A PRIA FACIE CASE UNDER THE NYSHRL**

The Callanan violated New York State Human Rights Law §§ 290 et seq. ("NYSHRL") as it relates to age discrimination when she aided and abetted AOMC in a pattern and practice of age discrimination against Cohen.  As AOMC is liable for age discrimination, as stated above, Callanan is liable under the NYSHRL.  *Redd v. New York Div. of Parole*, 923 F.Supp.2d 371, 392 (E.D.N.Y. 2012).

Callanan can also be liable whether or not AOMC is liable.  Even if plaintiff is procedurally barred against the employer, plaintiff is not precluded from proving liability against an individual employee where (1) the employer condoned or approved of the discriminatory conduct; and (2) the employee is liable under NYSHRL section 296(6).  *Johnson v. County of Nassau*, 82 F.Supp.3d 533, 536 (E.D.N.Y. 2015).  NYSHRL section 209(6) makes it unlawful discriminatory practice.  "for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under [the NYSHRL] or attempt to do so.  *Id.*, citing N.Y. Exec. Law § 296(6).  It is well-settled in the Second Circuit that where a defendant actually participates in the complained of discriminatory conduct, that person can be personally liable under the statute.  *Id.*, citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).

16

## CONCLUSION

For the foregoing reasons, this Honorable Court should reverse the decision of the District Court granting summary judgment and remand the case for trial.

Edward E. Kopko, Esq.
Atty. Reg. No. 510874
Edward E. Kopko, Lawyer, P.C.,
Attorney for Plaintiff-Appellant
106 East Court Street
Ithaca, New York 14850
607.269.1300; Fax 607.269.1301
office@kopko.law
Monday, June 17, 2024

## STATEMENT OF COMPLIANCE

I, Edward E. Kopko, Esq., certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point). I further certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) and contains 3,964 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Edward E. Kopko, Esq.
Atty. Reg. No. 510874
Atty. for Plaintiff-Appellant
Edward E. Kopko, Lawyer, P.C.
106 East Court Street
Ithaca, New York 14850
607.269.1300; 607.269.1301 fax
office@kopko.law
Monday, June 17, 2024

18