# 24-0648-cv

## United States Court of Appeals

### *for the*

## Second Circuit

BARRY A. COHEN,

*Plaintiff-Appellant,*

– v. –

ARNOT HEALTH, INC., ARNOT OGDEN MEDICAL CENTER,
DBA Arnot Health, ELEANOR CALLANAN, individually,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

ROBERT C. WHITAKER, JR.
HANCOCK ESTABROOK, LLP
*Attorneys for Defendants-Appellees*
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202
(315) 565-4500

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Defendants-Appellees Arnot Health, Inc. and Arnot Ogden Medical Center d/b/a Arnot Health (collectively "Arnot Health") certifies that there is no parent corporation or any publicly held corporation owning 10% or more stock in any one of the Defendants-Appellees.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ........................................................................1

COUNTERSTATEMENT OF THE ISSUES............................................4

COUNTERSTATEMENT OF THE CASE....................................................5

COUNTERSTATEMENT OF FACTS ......................................................6

SUMMARY OF ARGUMENT ............................................................13

STANDARD OF REVIEW ................................................................14

ARGUMENT ..............................................................................16

    I.    PLAINTIFF DID NOT SUFFER AN ADVERSE
           EMPLOYMENT ACTION AND HIS CONCLUSORY
           FUTILITY ARGUMENT DOES NOT CREATE A
           MATERIAL ISSUE OF FACT ............................................16

    II.   THE SINGLE STRAY REMARK RELIED ON BY
           PLAINTIFF IS INSUFFICIENT TO STATE A VIABLE
           CLAIM AND SUMMARY JUDGMENT SHOULD BE
           AFFIRMED ....................................................................22

    III.  PLAINTIFF'S ALLEGED EVIDENCE OF
           DISCRIMINATORY INTENT IS SPECULATIVE AND
           HIS CLAIM WAS PROPERLY DISMISSED ....................24

    IV.  PLAINTIFF'S STATE LAW CLAIM AGAINST MS.
           CALLANAN WAS PROPERLY DISMISSED ................27

CONCLUSION ..........................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abrahamson v. Bd. of Educ. Of Wappingers Falls Cent. Sch. Dist.*,
374 F.3d 66 (2d Cir. 2004)...............................................................14

*Agosto v. New York City Dep't of Educ.*,
982 F.3d 86 (2d Cir. 2022)................................................................21

*Benson v. Family Dollar Operations, Inc.*,
755 F. App'x 52 (2. Cir. 2018)........................................................14

*Brown v. Coach Stores*,
163 F.3d 706 (2d Cir. 1998).............................................................16

*Burt v. Nat'l Republican Club of Capital Hill*,
828 F. Supp. 2d 115 (D.D.C. 2011), *aff'd*, 509 Fed. App'x 1
(D.C. Cir. 2013) ................................................................................16

*Chan v. Donahoe*,
63 F. Supp. 3d 271 (E.D.N.Y. 2014)................................................26

*Comcast Corp. v. Nat'l Ass'n of African Am.- Owned Media*,
140 S. Ct. 1009 (2020)......................................................................15

*D'Amico v. City of New York*,
132 F.3d 145 (2d Cir. 1998).............................................................21

*Danzer v. Norden Sys., Inc.*,
151 F.3d 50 (2d Cir. 1998)...............................................................22

*Delaney v. Bank of America Corp.*,
766 F.3d 163 (2d Cir. 2014).............................................................14

*Desir v. City of New York*,
453 F. App'x 30 (2d Cir. 2011)........................................................21

*DeWitt v. Lieberman*,
48 F. Supp. 2d 280 (S.D.N.Y. 1999)................................................28

*DiGirolamo v. MetLife Group, Inc.*,
494 F. App'x 120 (2d Cir. 2012)................................................ 15, 24

*Dixon v. Int'l Federation of Accountants*,
416 F. App'x 107 (2d Cir. 2011)......................................................22

*Downey v. Adloox, Inc.*,
  789 F. App'x 903 (2d Cir. 2019)....................................................22

*Falbaum v. Pomerantz*,
  19 F. App'x 10 (2d Cir. 2001)......................................................28

*Gallegos v. Tompkins Consolidated Area Transit, Inc.*,
  785 F. App'x 16 (2d Cir. 2019)....................................................16

*Giordano v. Gerber Scientific Products, Inc.*,
  No. 99-cv-00712, 2000 WL 1838337 (D. Conn. Nov. 14, 2000),
  *aff'd*, 24 F. App'x 79 (2d Cir. 2001)...........................................26

*Gross v. FBL Fin. Servs.*,
  557 U.S. 167 (2009)....................................................................15

*Hatch v. Brennan*,
  792 F. App'x 875 (2d Cir. 2019)........................................... 14, 15

*Johnson v. County of Nassau*,
  82 F. Supp. 3d 533 (E.D.N.Y. 2015).................................... 27, 28

*Kerzer v. Kingly Mfg.*,
  156 F.3d 396 (2d Cir. 1998)........................................................21

*Keshinover v. New York State Office of Parks, Recreation and Historic Preservation*,
  No. 17-cv-4349, 2019 WL 5212235 (S.D.N.Y. Oct. 15, 2019).....................22

*Lively v. WAFRA Investment Advisory Group, Inc.*,
  6 F.4th 293 (2d Cir. 2021)................................................. 15, 23, 24

*Malarkey v. Texaco, Inc.*,
  983 F.2d 1204 (2d Cir. 1993)......................................................17

*Milione v. City University of New York*,
  950 F. Supp. 2d 704 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 38
  (2d Cir. 2014)............................................................................26

*Murphy v. EPA United Realty*,
  251 A.D.2d 469 (2d Dep't 1998)..................................................28

*Pellegrini v. Sovereign Hotels, Inc.*,
  740 F. Supp. 2d 344 (N.D.N.Y. 2010) .........................................28

*Philpott v. State University of New York*,
  805 F. App'x 32 (2d Cir. 2020)....................................................21

*Ruppe v. Blinken*,
 No. 17-2823, 2024 WL 3558427 (D.D.C. Jul. 3, 2024) .......................... 16-17

*Ruszkowski v. Kaleida Health System*,
 422 F. App'x 58 (2d Cir. 2011) ............................................. 14, 16

*Scotto v. Almenas*,
 143 F.3d 105 (2d Cir. 1998) ...................................................21

*Thelwell v. City of New York*,
 No. 13-cv-1260, 2015 WL 4545881 (S.D.N.Y. Jul. 28, 2015), *aff'd*,
 733 F. App'x 561 (2d Cir. 2018) ............................................ 17, 18

*Tomka v. Seiler Corp.*,
 66 F.3d 1295 (2d Cir. 1995) ...................................................28

*Van Zant v. KLM Royal Dutch Airlines*,
 80 F.3d 708 (2d Cir. 1996) ....................................................15

*Williams v. PMA Co., Inc.*,
 564 F. Supp. 3d 32 (N.D.N.Y. 2021) ...........................................15

## Statutes & Other Authorities:

Fed. R. Civ. P. 12(c) .............................................................23

NYSHRL § 296(6) ................................................................28

## INTRODUCTION

Plaintiff alleges age discrimination based on a single comment in an email sent by a recruiter, Defendant Eleanor Callanan ("Ms. Callanan"), in response to his application for a sleep medicine physician position at Arnot Ogden Medical Center ("AOMC") that referenced his age. The meaning of Ms. Callanan's single stray remark is in dispute. However, after it was brought to the attention of AOMC's Chief Executive Officer ("CEO"), the CEO personally emailed Plaintiff advising him that (a) he removed Ms. Callanan from the recruiting process and she would have zero involvement in the application process going forward, (b) he assigned a new recruiter, (c) Arnot does not discriminate based on age and has a long history of hiring candidates of all ages, and (d) AOMC would like to interview Plaintiff if he remained interested. Plaintiff accepted the CEO's offer and AOMC promptly scheduled an interview with Plaintiff.

The new recruiter, Karthika Surendran, sent Plaintiff an interview itinerary scheduling meetings with AOMC's most senior leaders including its CEO, Chief Medical Officer ("CMO"), Director of Sleep Medicine, Director of Operations and Director of Human Resources ("HR Director"). Ms. Surendran also offered Plaintiff a pre-interview call with the Director of Sleep Medicine to discuss AOMC's sleep program and answer questions Plaintiff might have about AOMC. Plaintiff accepted and a pre-interview call was scheduled. However, hours before

Plaintiff's scheduled call with the Director of Sleep Medicine and a week before the interview, Plaintiff voluntarily withdrew his application, telling Ms. Surendran he did so because he received a better job offer. When Plaintiff withdrew himself from consideration, the position at AOMC was vacant and it remained vacant for nearly a year thereafter. The position was never truly filled. Instead, a pain medicine physician was hired who performed part-time sleep medicine services.

Despite voluntarily withdrawing from the application process, Plaintiff filed this action alleging age discrimination based on a failure to hire. Plaintiff admits he has no evidence that Ms. Surendran, AOMC's CEO nor anyone scheduled to interview him harbors age discrimination bias. Instead, Plaintiff relies on Ms. Callanan's single stray remark which occurred before Plaintiff was offered and accepted an interview. Plaintiff also speculates that the interview was a sham because the interview itinerary AOMC provided supposedly did not meet his expectations. However, this speculative argument is contradicted by Plaintiff's sworn deposition testimony in which he said it was "highly likely" AOMC would have hired him if he did not withdraw his application. It's also contradicted by Plaintiff's admission that there is no evidence of discriminatory animus by Ms. Surendran and those scheduled to interview him. Further, the record confirms that Ms. Surendran created Plaintiff's itinerary consistent with her normal business practice.

After discovery closed, Defendants moved for summary judgment seeking dismissal of Plaintiff's claims. The District Court granted the motion and dismissed Plaintiff's claims, holding that the only potential evidence of age discrimination was Ms. Callanan's single stray remark. The District Court rightly concluded under established precedent that this single remark, which was made by a non-decision-maker and pre-dated Plaintiff's acceptance of an interview, was insufficient to create an inference of discrimination. The District Court also found that Plaintiff did not suffer an adverse employment action and instead voluntarily withdrew from the application process. The District Court properly rejected Plaintiff's argument that pursuing the job further was futile because it was speculative, conclusory and contradicted by Plaintiff's own statements that he withdrew his application because he received a better job offer and it was "highly likely" he would have been hired if interviewed by AOMC. Further, Plaintiff accepted the interview after the stray comment was made and Plaintiff admits there is no evidence the CEO or anyone involved with the scheduled interview harbors age bias. Thus, the District Court properly held that Plaintiff's speculation and conclusory arguments were insufficient to establish a prima facie claim of age discrimination. The District Court's decision is sound and should be affirmed.

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether the District Court properly granted Defendants' motion for summary judgment dismissing Plaintiff's failure to hire age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and New York State Human Rights Law ("NYSHRL") where Plaintiff's only potential admissible evidence of discriminatory intent was a single stray remark by a recruiter who was not part of the interview or decision-making process.

2.      Whether the District Court properly found that Plaintiff did not suffer an adverse employment action and rejected Plaintiff's futility argument where Plaintiff (i) admits to voluntarily cancelling his job interview and removing himself from further employment consideration after receiving what he called a "better job offer," (ii) admits there is no evidence that the person who prepared his interview itinerary harbors discriminatory bias, (iii) admits there is no evidence that the CEO or other individuals scheduled to interview him harbored any discriminatory bias, and (iv) provided sworn testimony that it was "highly likely" he would have been hired by AOMC if he did not withdraw his application and was interviewed.

3.      Whether the District Court properly granted Defendants' motion for summary judgment dismissing Plaintiff's age discrimination claim under the NYSHRL against Ms. Callanan individually where there is no liability against the employer, and there is no evidence AOMC condoned the alleged discrimination.

## COUNTERSTATEMENT OF THE CASE

Plaintiff asserts age discrimination claims under the ADEA and the NYSHRL based on an alleged failure to hire him.  After discovery closed, Defendants moved for summary judgment seeking to dismiss all of Plaintiff's claims.  The material facts were not genuinely in dispute and established that AOMC did not deny Plaintiff employment and Plaintiff's claim was rooted in a single remark by a non-decision-maker coupled with speculation and self-serving conjecture, not admissible evidence.  Therefore, the District Court found that Plaintiff failed to establish a prima facie case as Plaintiff did not suffer an adverse employment action and there was insufficient evidence to create an inference of discriminatory intent.

The District Court's decision was properly based on the following undisputed material facts: (a) Ms. Callanan's single stray remark upon which Plaintiff's claim rests was made by a non-decision maker and pre-dates his acceptance of an interview, (b) Ms. Callanan was not part of the scheduled interview or hiring process after Plaintiff accepted his interview, (c) the only person accused of age discrimination, Ms. Callanan, is the same age as Plaintiff creating a legal inference in Defendants' favor, (d) Ms. Callanan and AOMC have an established history of hiring employees as old as and older than Plaintiff, (e) Plaintiff admits there is no evidence that the individuals scheduled to interview him

harbored discriminatory age bias, (f) those scheduled to interview Plaintiff are similar in age to Plaintiff creating a legal inference in Defendants' favor, (g) Plaintiff voluntarily withdrew his employment application because, in his words, he received a "better job offer," and (h) Plaintiff gave sworn deposition testimony that it was "highly likely" AOMC would have hired him if he had not withdrawn his application. Therefore, the District Court properly granted summary judgment and dismissed Plaintiff's claims.

## COUNTERSTATEMENT OF FACTS

The following facts are undisputed as noted by the District Court in its careful analysis of the record. Plaintiff is a physician who specializes in sleep medicine. Joint Appendix ("JA") 26, ¶ 1. On August 28, 2019, Plaintiff was 66 years old and applied for a sleep physician job with AOMC. JA 26, ¶ 3. This was the first and only time Plaintiff ever applied for employment with AOMC. JA 32, ¶ 44.

Ms. Callanan worked as a recruiter of specialty medical providers for AOMC from 2006 until she retired in September 2020. JA 27, ¶ 8. Like Plaintiff, Ms. Callanan was 66 years old in August 2019. JA 27, ¶ 9. A total of 38 out of 53 medical providers recruited by Ms. Callanan from 2017 to September 2020 were offered employment by AOMC. JA 27, ¶ 14. A total of 20 of the 38—or 53%— medical providers recruited by Ms. Callanan who were offered jobs by AOMC

from 2017 to September 2020 were over the age of 40 years old, and within this group 13 medical providers were over the age of 50 years old and six were 60 years or older including two 71-year-olds. JA 27, ¶ 15. Between August 2018 and January 2019, Ms. Callanan presented five Chief Cardiology candidates to AOMC for employment consideration who were 47, 51, 52, 63 and 71 years old when screened by Ms. Callanan. JA 27, ¶ 16. From this group, AOMC hired the oldest candidate who was 71 years old. JA 28, ¶ 16. Between July 2017 and June 2018, Ms. Callanan presented five Non-Invasive Cardiology candidates to AOMC for employment consideration who were 37, 47, 55, 56 and 61 years old when recruited by Ms. Callanan. JA 28, ¶ 17. From this group, AOMC hired the oldest candidate who was 61 years old and a 47-year-old. JA 28, ¶ 17. In total, eight candidates recruited by Ms. Callanan from 2017 to September 2020 were 60 years old or older and six of them (i.e., 75%) were hired by AOMC. JA 28, ¶ 18.

On September 25, 2019, Ms. Callanan inadvertently sent an email meant for a co-worker to Plaintiff which stated in part, "Hey, [c]an you please review this CV and give me a call? Need help finding a reason that we don't want to consider a 66yo. I thought that we required fellowship training? This physician took a 120 hour sleep course in 2004 and passed the ABSM certification test." JA 28, ¶ 19. Ms. Callanan did not mean for this email to suggest Plaintiff should not be hired because of his age and in hindsight recognizes it is poorly worded. JA 29, ¶ 22.

7

Ms. Callanan meant to send this email to a co-worker to determine whether Plaintiff was qualified for the position because he was not fellowship trained in sleep medicine through a Graduate Medical Education ("GME") accredited program. JA 28-29, ¶¶ 20-21. Ms. Callanan referenced Plaintiff's age only because she noticed from Plaintiff's resume that he graduated college the same year that she did and thus believed there were no GME accredited sleep fellowships at the time Plaintiff graduated, making it unclear to her how Plaintiff could be properly certified as a sleep physician. JA 29, ¶ 23.

Ms. Callanan's September 25, 2019 email is the only remark or communication by any of the Defendants, including Ms. Callanan, that Plaintiff believes supports his age discrimination claim. JA 29, ¶ 24; JA 35, ¶ 70. Plaintiff forwarded Ms. Callanan's email to AOMC's President & CEO, Jonathan Lawrence, complaining about Ms. Callanan's email. JA 29, ¶ 25. Mr. Lawrence was 58 years at the time of the incident. JA 25, ¶ 7.

Mr. Lawrence was out of the country on vacation when Plaintiff emailed him, but promptly replied when he returned. JA 29, ¶ 26. Mr. Lawrence's email to Plaintiff stated: "I apologize for my delayed response, as I was out of the country when your initial email arrived. Thank you for your follow up and sharing this information with me. Arnot has a long history of hiring qualified physicians of all ages and does not discriminate on this basis. We do not tolerate any form of

discrimination at Arnot, whether based on age or any other characteristic. Please be assured that we are addressing your concerns with the employee who sent the email, and your application will be considered solely on its merits.  Meanwhile, we would like to schedule an interview so that we may further evaluate your credentials and experience.  You have my assurance that Ms. Callanan will have no involvement whatsoever in your interview or the decision-making process related to your application. I am copying Karthika Surendran on this email so that she can coordinate with you to schedule an interview if you are still interested.  We appreciate your interest in Arnot and look forward to meeting you."  JA 29-30, ¶ 27.

Ms. Surendran was also a recruiter for AOMC, responsible for recruiting medical specialty providers.  JA 30, ¶ 29.  Ms. Surendran emailed Plaintiff within hours of Mr. Lawrence's email, inviting Plaintiff for an interview and asking him for additional information including dates he was available to be interviewed.  JA 30, ¶ 30.  Plaintiff accepted the interview offer and replied to Ms. Surendran providing his availability.  JA 30, ¶ 31.  Ms. Surendran and Plaintiff subsequently exchanged several emails in the following weeks to ensure AOMC had all the information needed before his interview. JA 30-31, ¶¶ 31-32; JA 31-32, ¶¶ 39-43.

On November 18, 2019, Ms. Surendran sent Plaintiff an itinerary for his scheduled December 3, 2019 interview.  JA 31, ¶ 35.  The interview stated that

Plaintiff would interview with AOMC's CEO, CMO Dr. Kenneth Herzl-Betz, Director of Sleep Medicine Dr. Mark Ivanick, Director of Operations Floyd Metzger and the HR Director Heather Krauss. JA 31, ¶¶ 36 & 38. Ms. Callanan was not part of the interview process nor listed on the itinerary. JA 31, ¶ 37. This was the only interview itinerary Plaintiff ever received from AOMC and he was unfamiliar with what other AOMC itineraries for physicians typically contained. JA 32, ¶¶ 44-45. Plaintiff did not ask Ms. Surendran or anyone at AOMC why lunch or dinner was not scheduled on the itinerary. JA 32, ¶ 42.

Plaintiff is unaware of any information that would indicate that any of the individuals at AOMC who were scheduled to interview him harbor age-based discriminatory animus. JA 33, ¶ 51. Plaintiff is unaware of any information that would indicate that AOMC's new recruiter, Ms. Surendran, harbors age-based discriminatory animus. JA 34, ¶ 68. Plaintiff has no knowledge of any statements by AOMC's CEO that would indicate he harbors age-based discriminatory animus. JA 33, ¶¶ 56-58.

On November 20, 2019, Ms. Surendran emailed Plaintiff stating "Good Morning Dr Cohen, Dr. Mark Ivanick—our Sleep Medicine physician would like to speak with you regarding the position. He is available on Friday, 11/22 to talk. I would appreciate if you could please provide me your availability for Friday for a phone call. Thank you." JA 31, ¶ 38. Dr. Ivanick was the Director of Sleep

Medicine and the only physician at AOMC who practiced sleep medicine when the interview itinerary was sent to Plaintiff. JA 31, ¶ 39. Plaintiff accepted the offer and Ms. Surendran scheduled a call with Dr. Ivanick so Plaintiff could talk with Dr. Ivanick about the open position and answer questions he might have about AOMC. JA 32, ¶ 40; JA 48-49, ¶¶ 13-14; JA 80-81.

Plaintiff emailed Ms. Surendran and asked if he could reschedule the call with Dr. Ivanick for Monday or Tuesday of the following week. JA 32, ¶ 41; JA 80-81. Ms. Surendran accommodated Plaintiff's request and rescheduled the call for November 26, 2019 at 1:00 pm. JA 32, ¶ 42; JA 80. Ms. Surendran also sent Plaintiff a calendar invitation for the call with Dr. Ivanick. JA 32, ¶ 43. However, about two hours before his scheduled call with Dr. Ivanick, Plaintiff emailed Ms. Surendran to cancel his interview, stating "I think ***I wish to cancel the interview***. I was very interested in August, ***but now I have a better job offer***." JA 34, ¶ 59; JA 49, ¶ 16; JA 82-83 (emphasis added). Plaintiff's intent in sending this email was to withdraw himself from further consideration for employment with AOMC. JA 34, ¶¶ 59-62. Plaintiff has not reapplied for employment with AOMC since withdrawing his application on November 26, 2019. JA 34, ¶ 63.

Plaintiff testified during his deposition that it is "highly likely" AOMC would have hired him if he had not withdrawn his application and attended his scheduled interview. JA 34, ¶ 64; JA 364-365. When Plaintiff withdrew himself

from consideration for the sleep physician job, AOMC had not hired anyone for the position, and it remained vacant. JA 34, ¶ 65. AOMC never hired a full-time sleep physician. Instead, approximately a year later AOMC hired a pain medicine physician who practices sleep medicine on a part-time basis. JA 34, ¶ 66.

Mr. Lawrence's offer to interview Plaintiff and guarantee that Plaintiff would be fully and fairly considered for the sleep physician position without regard to his age was sincere and made in good faith. JA 33, ¶ 53. Mr. Lawrence intentionally removed Ms. Callanan from Plaintiff's recruiting process to address Plaintiff's concerns and to help ensure Plaintiff would be objectively considered for the sleep physician job without regard to his age or any other improper consideration. JA 33, ¶ 54. Plaintiff does not know whether Mr. Lawrence's offer to interview him was sincere. JA 33, 56. If Plaintiff had come to his interview, he would have been objectively considered for the position like any other candidate after a review of his qualifications and quality of interview. JA 33, ¶ 55.

## SUMMARY OF ARGUMENT

1.    Plaintiff failed to establish a prima facie case of age discrimination because he did not suffer an adverse employment action and Ms. Callanan's single remark is insufficient to establish discriminatory intent. This is particularly true when coupled with the undisputed fact that Ms. Callanan is the same age as Plaintiff, the CEO is similar in age to Plaintiff and Ms. Callanan and AOMC routinely recruited, interviewed and hired workers similar in age to and older than Plaintiff. Therefore, the District Court properly granted summary judgment dismissing Plaintiff's claims.

2.    Plaintiff's argument that the interview itinerary and Ms. Surendran's failure to ask about his GME credentials are evidence of discriminatory intent to establish a prima facie case is speculative, conclusory and contradicted by his own sworn testimony and other undisputed record evidence. Such a conclusory argument does not create a material issue of fact to establish a prima facie case and dismissal of Plaintiff's claims was proper.

3.    Ms. Callanan cannot be individually liable under the NYSHRL for her single stray remark because the employer has no liability, and AOMC did not condone or encourage any alleged discriminatory behavior.

## STANDARD OF REVIEW

A District Court's grant of summary judgment is reviewed *de novo*. *Delaney v. Bank of America Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). The well-established *McDonnell Douglas* burden-shifting framework applies to age discrimination claims under the ADEA. *Id.* Plaintiff's age discrimination claim under the NYSHRL is subject to the same standard as his ADEA claim. *Benson v. Family Dollar Operations, Inc.*, 755 F. App'x 52, 55 (2d. Cir. 2018) ("Claims of age discrimination under the New York State Human Rights Law . . . are analyzed under the same standards as ADEA claims.") (citing *Abrahamson v. Bd. of Educ. Of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 70 n.2 (2d Cir. 2004)).

Plaintiff asserts a failure to hire claim. Thus, Plaintiff must first establish a prima facie case by showing that (a) he is a member of the protected class, (b) he was qualified for the position, (c) he was denied the position, and (d) the denial of employment occurred under circumstances creating an inference of discrimination. *Ruszkowski v. Kaleida Health System*, 422 F. App'x 58, 60 (2d Cir. 2011); *see Hatch v. Brennan*, 792 F. App'x 875, 880 (2d Cir. 2019). The latter two elements of a prima facie case are at issue on this appeal. If Plaintiff establishes a prima facie case, the burden shifts to the employer to provide a non-discriminatory reason for its action. If the employer meets this requirement, the burden shifts back to Plaintiff who must provide admissible evidence that the employer's stated reason

14

for its decision not to hire Plaintiff is pretextual and that he was not hired because of age discrimination. *See id.*; *Williams v. PMA Co., Inc.*, 564 F. Supp. 3d 32, 45 (N.D.N.Y. 2021).

Plaintiff cannot rely on speculation and conjecture to meet this burden. *DiGirolamo v. MetLife Group, Inc.*, 494 F. App'x 120, 121-122 (2d Cir. 2012) (affirming summary judgment dismissing ADEA and NYSHRL claims where plaintiff offered no evidence of discriminatory intent beyond conclusory allegations and speculation); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996). Moreover, "it is not sufficient for a plaintiff to show 'that age was simply a motivating factor' in the employer's adverse action." *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009)). Rather, age discrimination claims are subject to a heightened "but for" causation standard and Plaintiff must demonstrate that "age was the reason" the employer took the adverse action. *Id.* (internal quotation marks and citations omitted). This heightened burden on Plaintiff applies at every stage of litigation including summary judgment. *See id.* (citing *Comcast Corp. v. Nat'l Ass'n of African Am.- Owned Media*, 140 S. Ct. 1009, 1014 (2020)); *Williams*, 564 F. Supp. 3d at 45.

## ARGUMENT

**I.     PLAINTIFF DID NOT SUFFER AN ADVERSE EMPLOYMENT ACTION AND HIS CONCLUSORY FUTILITY ARGUMENT DOES NOT CREATE A MATERIAL ISSUE OF FACT**

It is undisputed that Plaintiff was not denied employment, but voluntarily withdrew himself from employment consideration after receiving what Plaintiff described as a better job offer.  Therefore, Plaintiff did not suffer an adverse employment action, cannot establish a prima facie case of age discrimination and his claims were correctly dismissed by the District Court.  *See Gallegos v. Tompkins Consolidated Area Transit, Inc.*, 785 F. App'x 16 (2d Cir. 2019) (affirming dismissal of ADEA and Title VII claims where plaintiff withdrew from the application process); *Ruszkowski*, 422 F. App'x at 58 (prima facie failure to hire claim under the ADEA requires showing that plaintiff was denied the position); *Brown v. Coach Stores*, 163 F.3d 706, 711-712 (2d Cir. 1998) (plaintiff was required to show that she applied for a position to establish a prima-facie failure to promote claim under Title VII); *Burt v. Nat'l Republican Club of Capital Hill*, 828 F. Supp. 2d 115, 125-126 (D.D.C. 2011) ("There can be no adverse employment action where a plaintiff, of his own volition and despite being individually encouraged to do so, failed to complete the application process.") (citations omitted), *aff'd*, 509 Fed. App'x 1 (D.C. Cir. 2013) ("we affirm for the reasons given in the district court's opinion"); *Ruppe v. Blinken*, No. 17-2823, 2024 WL

3558427, at *10 (D.D.C. Jul. 3, 2024) (plaintiff's voluntary withdrawal of her job application was "fatal to the discrimination [claim] because she did not suffer the adverse action that is the necessary predicate for a prima facie claim").

Plaintiff acknowledges this well-established legal standard, stating "there is typically no adverse employment action where a plaintiff voluntarily withdraws his application prior to being offered the job." Plaintiff-Appellant's Brief at p. 8. However, Plaintiff argues that an exception applies because his continued pursuit of employment would have been futile. *Id.* at pp. 8-9.

This Court has recognized a limited futility exemption. *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993). To qualify for this narrow exception, Plaintiff bears the "not always easy burden of proving" that he would have pursued the job further "had it not been for those [alleged discriminatory] practices," and that the alleged discriminatory actor played a "key role" in the decision-making process sufficient to deter him from pursuing the position. *Thelwell v. City of New York*, No. 13-cv-1260, 2015 WL 4545881, at *16 (S.D.N.Y. Jul. 28, 2015), *aff'd*, 733 F. App'x 561, 563-564 (2d Cir. 2018) (affirming summary judgment and holding that plaintiff's speculation that the alleged discriminator influenced the employer's decision was insufficient to establish a prima facie discrimination case). Thus, where a plaintiff is "invited to apply, and . . . the only alleged

17

discriminatory actor, had just a minor role in the application process," the plaintiff cannot establish a prima facie case. *Id.*

Here, Plaintiff's futility argument rests entirely on Ms. Callanan's single stray remark. The record is clear that Ms. Callanan's remark did not dissuade Plaintiff from pursuing the position further. The CEO emailed Plaintiff and personally assured him that he would be fairly considered for the position and Ms. Callanan was removed from the process. It is undisputed that Ms. Callanan was removed from the hiring process and was not involved in the decision-making process. The CEO told Plaintiff he would like to "schedule an interview *if you are still interested.*" JA 29-30, ¶ 27 (emphasis added). Plaintiff could have said he was not interested because of Ms. Callanan's remark. However, Plaintiff remained interested in the position and accepted the interview offer ***after*** receiving Ms. Callanan's email. Moreover, Plaintiff subsequently engaged in multiple communication with Ms. Surendran providing her with information to further process his application and scheduled a pre-interview call with AOMC's Director of Sleep Medicine to discuss the position. If Ms. Callanan's email truly caused Plaintiff to believe pursuing the position further was futile, he would not have subsequently taken all these actions to advance his employment application.

Plaintiff admits there is no evidence that Ms. Surendran, the CEO or anyone involved with the interview process harbors discriminatory animus. There is no

admissible evidence that something occurred after Plaintiff accepted and scheduled the interview to create a reasonable belief that pursuing the job would be futile. Instead, Plaintiff attempts to resuscitate his futility argument through speculative and conclusory arguments. Specifically, Plaintiff argues the interview itinerary he was given by Ms. Surendran was "inadequate and insufficient and demonstrated to [Plaintiff] that AOMC was merely going through the motions in order to appear non-discriminatory." Plaintiff-Appellant's Brief at p. 9.

Plaintiff's speculative and conclusory argument is not supported by evidence. Plaintiff had not previously applied for a job with AOMC and had no knowledge regarding what AOMC typically put in itineraries when he withdrew his application. JA 31, ¶¶ 44-45; JA 32, ¶¶ 44-45; JA 107. Plaintiff verified at his deposition on October 13, 2022, that at that time he lacked any knowledge regarding the content of interview itineraries AOMC provided to other applicants. JA 31, ¶¶ 44-45; JA 107. He did not have access to the itineraries cited in this appeal until after this deposition when his lawyer obtained them via a FOIA request. Plaintiff-Appellant's Brief at p. 12. Thus, when Plaintiff withdrew his application years earlier on November 26, 2019 (JA 34, ¶¶ 59-60; JA 82-83), he was unaware of these itineraries, and they could not have influenced his decision to withdraw. Also, these itineraries were given to non-parties seeking different positions and were <u>not</u> prepared by <u>Ms. Surendran</u> except for one. JA 598-599. It

is undisputed that Ms. Surendran prepared Plaintiff's itinerary without any input from Ms. Callanan and followed her normal business practice when preparing Plaintiff's itinerary. JA48-49, ¶¶ 6-12 & 18; JA 599, ¶¶ 5-6. Ms. Surendran produced dozens of itineraries that <u>she</u> prepared around the period that Plaintiff applied to AOMC which are like the one given to Plaintiff, corroborating that she followed her normal practice when preparing Plaintiff's itinerary. JA 33, ¶ 50. The fact that selected itineraries prepared by another person for different jobs differ from itineraries prepared by Ms. Surendran is irrelevant and does nothing to establish age discrimination.

Additionally, Plaintiff's itinerary scheduled interviews with Arnot Health's most senior leaders including its CEO, CMO, Director of Sleep Medicine, Director of Operations and HR Director. Ms. Surendran also scheduled a pre-interview phone call with the Director of Sleep Medicine which Plaintiff accepted. It is undisputed that there is no evidence whatsoever that the CEO, Ms. Surendran or anyone scheduled to interview Plaintiff harbored age bias. It is undisputed that the CEO's assurance that Plaintiff would be fully and fairly considered for the position without regard to his age was sincere and made in good faith. These undisputed acts signal to a reasonable person that Plaintiff's application was being seriously considered and contradict Plaintiff's speculative argument. In fact, Plaintiff admits his argument is speculative, affirming that he merely "suspect[s] the entire

interview process . . . was pretextual" and speculates about the CEO's potential motive.  JA 476, ¶¶ 38-39.   It is settled law that such speculation and conclusory allegations do not create a material issue of fact to defeat summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 115 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)) (other citation omitted); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Desir v. City of New York*, 453 F. App'x 30, 33 (2d Cir. 2011) (citation omitted).

Plaintiff's futility argument is further belied by his own words.  When Plaintiff withdrew his application, he said that it was because he received a "better job offer."  JA 34, ¶ 59; JA 49, ¶ 16; JA 82-83.  Plaintiff also provided sworn testimony that it was "highly likely" AOMC would have hired him if he did not withdraw and had attended his interview.  JA 34, ¶ 64; JA 364-365.  Plaintiff is bound by his sworn testimony and cannot defeat summary judgment through contradictory self-serving argument.  Therefore, dismissal of his claims should be affirmed.  *See Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 102 (2d Cir. 2022) (plaintiff's contradicting affidavit "cannot create a material dispute of fact") (citation omitted); *Philpott v. State University of New York*, 805 F. App'x 32, 33-34 (2d Cir. 2020) (affirming summary judgment dismissing employment discrimination claims and holding that "conclusory statements . . . and affidavits that contradict the party's previous sworn testimony . . . cannot defeat summary

judgment.") (internal quotation marks, alterations and citations omitted);

*Keshinover v. New York State Office of Parks, Recreation and Historic Preservation*, No. 17-cv-4349, 2019 WL 5212235, at *10 (S.D.N.Y. Oct. 15, 2019) (granting summary judgment and holding that "plaintiff cannot argue that he would have been hired but for his withdrawal, yet also argue that he withdrew because he was certain he would not be hired.").

## II. THE SINGLE STRAY REMARK RELIED ON BY PLAINTIFF IS INSUFFICIENT TO STATE A VIABLE CLAIM AND SUMMARY JUDGMENT SHOULD BE AFFIRMED

The crux of Plaintiff's claim is a single remark in Ms. Callanan's email made before he accepted an interview. As explained above, it is the only admissible evidence that arguably infers discriminatory intent against Ms. Callanan. However, even if the Court infers discriminatory animus from Ms. Callanan's email, it is settled law that a single stray remark cannot by itself form the basis for a viable age discrimination claim. This is true even if Ms. Callanan was a decision-maker, which she was not. *Downey v. Adloox, Inc.*, 789 F. App'x 903, 906 (2d Cir. 2019) ("'[s]tray remarks,' even when made by decision makers, do not make out a discrimination case") (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)); *Dixon v. Int'l Federation of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (plaintiff failed to state a prima facie claim of age discrimination based on an isolated derogatory remark by a non-decision maker).

22

As noted by the District Court, the Second Circuit recently addressed the weight given to stray age-based remarks in *Lively v. WARFA Investment Advisory Group, Inc.*, 6 F.4th 293 (2d Cir. 2021). In *Lively*, the plaintiff's only evidence of age discrimination was two statements by his supervisor. The supervisor allegedly said that plaintiff "was too old and that he would seek to replace [plaintiff] . . . with [a] younger counterpart," and that the company "needed to replace older employees like [plaintiff] with younger employees." *Id.* at 306. Defendant moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) and the claim was dismissed. This Court affirmed dismissal, finding that "[s]tray age-related remarks are insufficient to raise an inference of discriminatory intent unless they (1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision." *Id.* (citation omitted).

Here, a single remark was made by Ms. Callanan who was not a supervisor or decision-maker and was entirely removed from the application and interview process by the CEO. Further, as explained above, there was no adverse employment decision to which the stray remark is connected. Ms. Callanan's limited correspondence with Plaintiff did not represent a final determination as evidenced by the fact that Plaintiff was offered and accepted an interview. Thus, the District Court properly found that Plaintiff's claim must also be dismissed

23

because there is insufficient evidence that the alleged failure to hire occurred under circumstances giving rise to an inference of discrimination. *Id.*

### III. PLAINTIFF'S ALLEGED EVIDENCE OF DISCRIMINATORY INTENT IS SPECULATIVE AND HIS CLAIM WAS PROPERLY DISMISSED

Plaintiff argues that summary judgment was improper because there is potential evidence of discrimination beyond Ms. Callanan's single stray remark. Specifically, Plaintiff argues that the interview itinerary he received and Ms. Surendran's failure to inquire about Plaintiff's GME sleep medicine credentials are evidence of discriminatory intent. Plaintiff-Appellant's Brief at pp. 14-15. However, these conclusory arguments were properly rejected by the District Court as speculative and unsupported by admissible evidence.

Plaintiff's argument about the interview itinerary was addressed above and for brevity is not repeated here, except to note that the District Court properly found Plaintiff's alleged perception of the itineraries based on experience with other employers is not admissible evidence of discriminatory intent. Rather, it is speculative conclusory argument which cannot defeat summary judgment. *DiGirolamo*, 494 F. App'x at 121-122 (affirming summary judgment dismissing ADEA and NYSHRL claims where plaintiff offered no evidence of discriminatory intent beyond conclusory allegations and speculation); *Lively*, 6 F.4th at 306

24

(affirming dismissal of age discrimination claimed based on vague and conclusory allegations).

Plaintiff's argument that Ms. Surendran's failure to inquire about Plaintiff's GME sleep medicine credentials shows discriminatory intent is also speculative and conclusory. Plaintiff argues that if GME credentials were required for the position then Ms. Surendran would have followed up on the issue with Plaintiff. Plaintiff-Appellant's Brief at p. 15. Plaintiff opines that Ms. Surendran's failure to ask for this information imputes upon Defendants' discriminatory intent because it supposedly shows the interview was a sham. *Id.*

This argument is flawed for many reasons. First, it is speculative conjecture, not admissible evidence. Second, Plaintiff admits he has no evidence that Ms. Surendran harbors discriminatory intent. JA 34, ¶ 68. Thus, Plaintiff's speculation regarding the meaning of Ms. Surendran's inaction on the issue proves nothing to support his claims. Third, the CEO directed Ms. Surendran to schedule an interview with Plaintiff if he remained interested in the position "so that we may further evaluate [his] credentials." JA 29-30, ¶ 27. This made Ms. Callanan's prior inquiry about whether Plaintiff was qualified irrelevant to Ms. Surendran. The issue was going to be decided by the CEO, CMO and other senior directors scheduled to interview Plaintiff. Fourth, Plaintiff admits he has no evidence of discriminatory animus by the CEO. JA 33, ¶¶ 56-58; JA 103. Fifth, Plaintiff's

argument that the interview was a sham is contradicted by Plaintiff's sworn testimony that it is "highly likely" AOMC would have hired him if he completed the interview.  JA 34, ¶ 64; JA 364-365.

These undisputed facts contradict Plaintiff's speculation about why Ms. Surendran did not ask about his GME credentials.  Further, the record contains significant evidence that creates a legal inference that discrimination did <u>not</u> occur, including the fact that Ms. Callanan is the same age as Plaintiff.  *See Milione v. City University of New York*, 950 F. Supp. 2d 704, 710 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 38 (2d Cir. 2014) (citations omitted) ("courts may draw an inference against discriminatory intent where the person who participated in the adverse action is a member of the same protected class."); *Chan v. Donahoe*, 63 F. Supp. 3d 271, 298 (E.D.N.Y. 2014) (granting summary judgment dismissing age discrimination claim where the decision-maker was similar in age to plaintiff based in part on the "especially well-recognized inference against discrimination that occurs when a plaintiff alleges discrimination by a member of the same protected class.").  Likewise, AOMC's CEO is similar in age to Plaintiff creating another inference favoring dismissal.  *See Milione*, 950 F. Supp. 2d at 710; *Giordano v. Gerber Scientific Products, Inc.*, No. 99-cv-00712, 2000 WL 1838337, at *7 (D. Conn. Nov. 14, 2000), *aff'd*, 24 F. App'x 79 (2d Cir. 2001) (in ADEA cases, "[w]here the decision-makers are also in the protected age group an inference may

26

be drawn that there is no age-based animus."). Therefore, the District Court properly found that Plaintiff's conclusory and speculative argument was insufficient to establish a viable claim and its dismissal of Plaintiff's claims should be affirmed.

## IV. PLAINTIFF'S STATE LAW CLAIM AGAINST MS. CALLANAN WAS PROPERLY DISMISSED

Plaintiff argues that even if the claims against AOMC were properly dismissed, Ms. Callanan can be individually liable for aiding and abetting age discrimination under the NYSHRL. Plaintiff-Appellant's Brief at p. 16. Plaintiff relies on the holding in *Johnson v. County of Nassau*, 82 F. Supp. 3d 533 (E.D.N.Y. 2015), to argue that Ms. Callanan can be liable under the NYSHRL as an aider and abettor regardless of whether the employer is liable. This is untrue and that argument was expressly rejected by the court in *Johnson*. Specifically, *Johnson* held that although plaintiff was *procedurally* barred from naming the employer as a defendant, plaintiff could still pursue claims against an individual but only if the employer's liability was first established. *Id.* at 537-538. To avoid any doubt, the court expressly stated "[i]n reaching this decision, the Court emphasizes that the absence of the employer as a party to the suit *does not relieve plaintiff of its obligation . . . of first proving the liability of the employer*." *Id.* (citations omitted) (emphasis added).

*Johnson* simply reiterates settled law that "the employer's participation in the discriminatory practice . . . serves as the predicate for the imposition of liability on others for aiding and abetting." *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (citing *Murphy v. EPA United Realty*, 251 A.D.2d 469, 472 (2d Dep't 1998)); *see* NYSHRL § 296(6). Therefore, a plaintiff cannot prevail on his claims against the individual defendant unless he "can first establish the liability [of his employer]." *Id.* (citing *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999). Thus, *Johnson* confirms that because AOMC is not liable as the employer, Ms. Callanan cannot be individually liable for aiding and abetting and the NYSHRL claim against her was properly dismissed. *Id.*; *Falbaum v. Pomerantz*, 19 F. App'x 10, 15 (2d Cir. 2001) (affirming dismissal of NYSHRL age discrimination claims against the individual defendant and holding that "once an employer has been found to have not discriminated, there is no predicate for imposing [individual] liability . . . under an aiding and abetting theory.") (citations omitted); *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1315 (2d Cir. 1995) ("a prerequisite to agent liability [under the NYSHRL] is a finding that the complained-of conduct can be imputed to the employer").

Additionally, even if employer liability was not required, Plaintiff's argument is contingent on a showing that "the employer condoned or approved of the discriminatory conduct." Plaintiff-Appellant's Brief at p. 16. There is no

admissible evidence that AOMC condoned or approved of Ms. Callanan's stray remark or any discriminatory conduct. Instead, there is significant evidence that AOMC condemned the alleged discriminatory remark. Specifically, the District Court properly found it is undisputed that when AOMC's CEO learned of Ms. Callanan's stray remark, the CEO "removed Defendant Callanan from Plaintiff's application, assured Plaintiff he would be considered fairly, assigned a new recruiter to his application, and offered him an interview for the sleep physician position" and there is "no evidence presented that Mr. Lawrence or any of the other individuals who were to be involved in Plaintiff's interview harbored any age-related discriminatory animus." Special Appendix ("SA") at p. 34. It is also undisputed that Ms. Callanan was given "a verbal reprimand regarding the need to give all job candidates equal opportunity without regard to age or other personal characteristics, as well as a written warning." *Id.*

The only evidence on the issue contradicts Plaintiff's argument and shows that AOMC did not condone or approve the alleged discriminatory conduct. Therefore, the District Court's dismissal of claims against Ms. Callanan should be affirmed.

# CONCLUSION

The District Court's decision is based on undisputed facts and is consistent with this Court's precedent. Conversely, Plaintiff's appeal is founded on conclusory and speculative argument which this Court has repeatedly found inadequate to defeat summary judgment. Therefore, Defendants respectfully submit that the District Court's Decision and Order should be affirmed.

Dated: September 16, 2024

*Counsel for Defendants-Appellees Arnot Health Inc., Arnot Ogden Medical Center d/b/a Arnot Health and Eleanor Callanan, individually*

HANCOCK ESTABROOK, LLP

By: /s/*Robert C. Whitaker Jr.*
    Robert C. Whitaker Jr., Esq.
    100 Madison St., Suite 1500
    Syracuse, New York 13202
    Tel: (315) 565-4500

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), the typeface requirement of Fed. R. App. P. 32(a)(5), and the typestyle requirements of Fed. R. App. P. 32(a)(6). This brief contains 6,926 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and is prepared in a proportionally spaced typeface (14-point Times New Roman).